UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 10-21167-CIV-KING

WAYNE PATHMAN,

      Plaintiff,

v.

GREY FLANNEL AUCTIONS, INC. and
RICHARD E. RUSSEK,

      Defendants.
_____/

**ORDER DENYING MOTIONS TO DISMISS**

**THIS CAUSE** comes before the Court upon the Defendants' Motions to Dismiss for Lack of Personal Jurisdiction (DE# 10, 11) filed May 24, 2010.[1] After a careful review of all the pleadings, discovery, and for the reasons stated herein, the Court denies Defendants' Motions to Dismiss.

**I.**    **Factual Background**

In approximately 1989, Defendant Richard Russek ("Russek") co-founded Defendant Company Grey Flannel Auctions Inc., ("GFA") as an authenticator of game-worn sports memorabilia. Russek currently serves as President of GFA. In 1999, GFA began auctioning,

---

[1] Plaintiff filed its response in opposition (DE # 16 ), on June 9, 2010. On June 10, 2010 (DE #18) the Court granted the parties 60 days in which to conduct limited jurisdictional discovery, resulting in the Plaintiff filing his supplemental brief (DE # 24) and Defendants' their joint reply (DE # 26).

1

brokering, and selling high-end sports memorabilia. On June 10, 2002, Plaintiff Wayne Pathman ("Pathman") visited GFA's website to view items that were scheduled to be auctioned on June 12, 2002.[2] Plaintiff was interested in and bid on a 1947 Joe DiMaggio New York Yankees Game-Used and Autographed Road Jersey ("Jersey") which was advertised as being worn by DiMaggio during the 1947 season, when DiMaggio led the Yankees to a World Series win. On June 11, 2002, Plaintiff alleges that he called Russek from the his home in South Florida to learn more details regarding the specific qualities of the Jersey. Plaintiff alleges that during that conversation Russek made several oral representations including that he had conducted an investigation as to the authenticity of the Jersey by comparing the Jersey to photographs of DiMaggio wearing it during the 1947 season and 1948 World Series. He also allegedly stated that the Jersey was an authentic-game used Jersey most likely worn by DiMaggio during the 1947 World Series. In addition, Plaintiff alleges he was told the Jersey was personally signed by DiMaggio and that there was a picture of him signing it as evidence. Based on the description of the Jersey on the website and Russek's representations, Plaintiff decided to bid on the Jersey. Plaintiff bid approximately $35,000 and on the morning of June 13, 2002 was informed that he was the highest bidder for the Jersey in the auction. Plaintiff paid for, and received his Jersey. From 2002 to 2009, Plaintiff purchased many other items from GFA totaling approximately $500,000.00. Then, in 2009, Plaintiff decided to sell

---

[2] In Plaintiff's Complaint, Plaintiff alleges he viewed items available for bidding on GFA's website located at: www.greyflannel.com. *See* Pl. Compl. ¶ 3. However in its response in opposition to Defendants' Motions to Dismiss, Plaintiff states the website it visited was a different website, found at: www.greyflannelacutions.com. *See* Pl. Resp. Opp. at 2 fn. 1. The court addresses this discrepancy further in this Order.

the Jersey to raise capital to enlarge other aspects of his sports memorabilia collection. At that time he contacted GFA and inquired whether they would be interested in brokering the sale of the Jersey. Plaintiff spoke with GFA's auction director T.J. Favilla ("Favilla"), and asked him to estimate how much he thought the Jersey was worth. Plaintiff alleges that Favilla discussed it with Russek and received a call two (2) days later letting him know that the DiMaggio Jersey had gone out of favor, and was only worth what Plaintiff originally paid for it, which was $35,000. Plaintiff alleges that quote made him suspicions because it was not consistent with what he had found in his own investigation of the current value of DiMaggio game-worn Jerseys. Plaintiff proceeded to contact another authenticating company by the name of Memorabilia Evaluation and Research Services ("MEARS") and asked them to conduct an independent examination of the Jersey. After doing so, MEARS issued a detailed letter ("MEARS Opinion") concluding that they could not authenticate the Jersey because it did not possess all of the characteristics that one would expect fo find in a 1947 Joe DiMaggio New York Yankees Game-Used and Autographed Road Jersey.[3] Based on the MEARS Opinion, Plaintiff sent Defendants an e-mail and letter via U.S. mail and asked them to remedy the situation. Plaintiff alleges that Defendants refused to answer his letter or return his calls. On April 12, 2010, Plaintiff filed the two-count Complaint (DE #1) in the above-styled action alleging Fraud in the Inducement and Negligent Misrepresentation. In the instant motions, Defendants argue that Florida courts lack personal jurisdiction over them, and that this case should

---

[3] Plaintiff alleges that according to the MEARS Opinion attributes of the Jersey, taken together demonstrate that the Jersey is not authentic. Specifically the Jersey's type of button alignment and font styles do not match any photographic evidence of either DiMaggio or any other New York Yankees player for the period in question; the Jersey is missing any sort of laundry instructions, which is "atypical" in comparison to the manufacture's products for the New York Yankees and three (3) other teams of this period; in addition to the use and wear condition of the Jersey being minimal, which is inconsistent with a game-worn Jersey.

be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(2) and (3) as a result.

## II.   Personal Jurisdiction

Non-resident defendants may contest personal jurisdiction in Florida by filing a motion to dismiss, in which the motion challenges the jurisdictional allegations made in the Complaint, or else that the non-resident defendant lacks sufficient minimum contacts with the forum state. *See Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 502 (Fla. 1989). To contest a complaint's jurisdictional allegations, or to challenge the presence of minimum contacts, the defendant must file an affidavit. *Id.* If the Defendant succeeds in refuting the jurisdictional allegations, the burden then shifts to the plaintiff, who must prove by affidavit the basis upon which jurisdiction may be obtained. *Id.* "Where the affidavits can be harmonized, the trial court can make a decision based upon facts that are essentially undisputed. If the affidavits are in direct conflict and cannot be reconciled, then the trial court must hold a limited evidentiary hearing to determine jurisdiction." *Glovegold Shipping, Ltd. v. Sveriges Angfartygs Assurans Forening*, 791 So. 2d 4, 10 (Fla. 1st DCA 2000).

To determine whether the exercise of personal jurisdiction in Florida over a non-resident is proper, a two-part inquiry must be made. *See Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1166 (11th Cir. 2005). "First, we determine whether the exercise of jurisdiction is appropriate under the forum state's long-arm statute." *Id.* (quoting *Mut. Serv. Ins. Co. v. Frit Indus., Inc.*, 358 F.3d 1312, 1319 (11th Cir. 2004)). "Second, we examine whether the exercise of personal jurisdiction over the defendant would violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution, which requires that the defendant have minimum contacts with the forum state and that the exercise of jurisdiction over the

defendant does not offend 'traditional notions of fair play and substantial justice.'" *Horizon*, 421 F.3d at 1166 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

### A. **Florida Long-Arm Statute**

The Florida long-arm statute provides two alternative bases for the exercise of personal jurisdiction: specific and general jurisdiction. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 & 415 n.9 (1984). General jurisdiction exists "when a State exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum . . . ." *Id.* at 415 n.9. Specific jurisdiction exists "when a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum." *Id.* at 414 n.8. The Florida long-arm statute provides for both manners of personal jurisdiction. "The reach of the Florida long-arm statute is a question of Florida law. Therefore, federal courts are required to construe it as would the Florida Supreme Court." *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990).

### i. **General Jurisdiction**

In regard to determining whether the exercise of general jurisdiction is appropriate, the Florida long-arm statute provides, in relevant part, that:

> A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.

Fla. Stat. § 48.193(2). "The 'substantial and not isolated activity' requirement of the long-arm statute has been recognized by Florida courts as the functional equivalent of the continuous and systematic contact requirement for general jurisdiction under the Fourteenth Amendment Due

Process Clause as discussed in *Helicopteros Nacionales*. . . ." *Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 n.6 (11th Cir. 2002). In *Helicopteros Nacionales*, the Supreme Court of the United States held that where a foreign defendant's "contacts with Texas consisted of sending its chief executive officer to Houston for a contract-negotiation session; accepting into its New York bank account checks drawn on a Houston bank; purchasing helicopters, equipment, and training services from Bell Helicopter for substantial sums; and sending personnel to Bell's facilities in Fort Worth for training," this did not amount to continuous and systematic contact with the forum state, and as such, general jurisdiction could not be exercised over the foreign defendant. 466 U.S. at 413-416. It is clear, then, that a very high threshold must be met in order for general jurisdiction to be exercised over a nonresident defendant in Florida. *See id.*; *see also Estate of Fraser v. Smith*, No. 04-22191-CIV-JORDAN, 2007 U.S. Dist. LEXIS 96842, at *12-16 (S.D. Fla. 2007) (holding that general jurisdiction in Florida could not be exercised over a foreign tour operator whose contacts with Florida consisted of purchasing and taking delivery of boats; sending two shareholders to negotiate the purchase of the boats; advertising in local publications; running an interactive website conducting business; sending an employee to attend a five-month course; directing an employee to attend a trade show to promote its tours; and entering into commission agreements with Florida corporations and individuals).

In light of the Supreme Court's holding in *Helicopteros Nacionales*, Defendants' contacts with Florida do not rise to the level of "substantial and not isolated activity." *See* 466 U.S. at 413-16. At most, Defendants' activity in the forum state consists of traveling to Florida on business two to three times a year, occasionally visiting the state as a tourist, phone calls, e-mail, and some mail solicitations. Neither of Defendants' connections to Florida are "so extensive to be tantamount to

[a defendant] being constructively present in the state to such a degree that it would be fundamentally fair to require it to answer in [the forum state's courts] in any litigation arising out of any transaction or occurrence taking place anywhere in the world." *Exhibit Icons, LLC v. XP Cos., LLC*, 609 F. Supp. 2d 1282, 1295 (S.D. Fla. 2009) (quoting *Baker v. Carnival Corp.*, No. 06-21527-CIV-HUCK, 2006 U.S. Dist. LEXIS 85114, at *7-8 (S.D. Fla. 2006)). However, that is not where the inquiry ends. The court does find jurisdiction exists under the second provision of Florida's long-arm statute.

### ii. Specific Jurisdiction

In determining whether the exercise of specific jurisdiction is appropriate, the Florida long-arm statute provides, in relevant part, that:

> Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself . . . to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts: (a) Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state; (b) Committing a tortious act within this state.

Fla. Stat. § 48.193(1). An analysis of both of the relevant provisions of the long-arm statute is warranted on these facts.

### 1. Conducting Business in Florida

"In order to establish that a defendant is 'carrying on business' for the purposes of the Long-Arm statute, the activities of the defendant must be considered collectively and show a general course of business activity in the state for pecuniary benefit." *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000) (per curiam). Though none are dispositive, a number of factors are particularly relevant in such an analysis. Namely, whether the defendant

operates an office in Florida; possesses and maintains a license to do business in Florida; serves clients in Florida; and, if any, the amount of revenue obtained as a result, are all useful inquiries in determining whether a defendant has conducted business in Florida for the purpose of the long-arm statute. *Horizon*, 421 F.3d at 1166. With the preceding general criteria in mind, the Court first finds that this prong of the long-arm statute reaches Defendants.

Consideration of the above-mentioned factors demonstrates that Russek has maintained business activities in Florida since 2002. Russek travels to Florida several times a year in order to sell and consign auction items. Even though he claims that he does not advertise in any Florida-specific publication, or targets no mailing, advertising or solicitations at Florida, the record reflects otherwise. Defendants argue that the catalogs that were sent to Floridians were no different than those sent to others across the country. The Court finds that whether they were specifically crafted for Florida, or not, does not alter the fact that they were sent directly to Floridians presumably for their viewing and enticement to buy Defendants' products. Moreover, Defendants own call-log show consistent calls to Florida since 2002, which although may not be sufficient to establish jurisdiction individually, taken in whole establishes a clear relationship with the State of Florida, warranting the Court's exercise of jurisdiction. Defendants have also proffered that according to their records 152 Florida registrants have bid in six (6) GFA auctions between May 2008 and April 12, 2010. In further evidence of their relationship with the state, for their most recent auction, Defendants sent 91 registrants in Florida a catalog showing items available for bidding. Defendants cite to a legion of cases purportedly holding that limited commercial activity in or with Florida does not confer specific personal jurisdiction under section 48.193(1)(a). However those cases are inapposite when compared with the level of activity that the Court has before it on these facts.

**2.     Committing a Tortious Act in Florida**

In addition to allowing the exercise of jurisdiction over a defendant who directly commits a tort while physically present in the State of Florida, section 48.193(1)(b) of the Florida long-arm statute allows the exercise of jurisdiction over a nonresident defendant who commits a tort outside of Florida that causes injury inside the state. *See Whitney Info. Network, Inc. v. Xcentric Ventures, LLC*, 199 Fed. Appx. 738, 741 (11th Cir. 2006). "'Committing a tortious act' in Florida under section 48.193(1)(b) can occur through the nonresident defendant's telephonic, electronic, or written communications into Florida, as long as the plaintiff's cause of action arises from the communications." *Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002).

In light of this legal standard, the Court finds that Plaintiff has adequately alleged sufficient material facts in its Complaint which if proven would show that Russek committed a tortious act that caused injury in the State of Florida. Taking Plaintiff's claims as true, Russek was involved in the sale of a fraudulent baseball Jersey allegedly belonging to Joe DiMaggio. Thus, the Court finds that Defendants fulfill the requirements for jurisdiction under this provision of the state's long-arm statute.

**3.     Internet Related Activity**

In addition to the above mentioned considerations, the facts before the Court show that Defendants also conducted significant activity over the internet, including immediate, interactive sales with Florida residents through their website. Active internet solicitation may subject a defendant to personal jurisdiction. *See Keenan*, 71. F.Supp. 2d. 1228, 1234 *(*M.D. Fla. 1999*), citing Thompson v. Handa-Lopez, Inc.*, 998 F. Supp. 738 (W.D. Tex. 1998); *see also Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119 (W.D.Pa. 1997). In determining whether internet

9

contacts satisfy the above factors, Florida courts have applied *Zippo*, which describes the minimum contacts in terms of a spectrum:

> At one end of the spectrum are situations where a defendant clearly does business over the internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an internet website which is accessible to users in a foreign jurisdictions. A passive website that does little more than make information available to those who are interested in it is not grounds for exercise [of] personal jurisdiction. The middle ground is occupied by interactive website where a user can exchange information with the host computer. In these cases , the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the website.

*Zippo*, 952 F.Supp. at 1124. The Eleventh Circuit has not directly addressed the issue presented in *Zippo*, however it has relied on the sliding scale analysis provided by the *Zippo* Court. *See Oldfield*, 558 F.3d at 1220, n.26. The court views internet activity within the sliding scale context provided by *Zippo*, as an aspect of purposeful availment, but not as definitive in and of itself.

The Plaintiff has referenced two website it has allegedly conducted business with. The first is www.greyflannelacutions.com and the second is www.greyflannel.com. In the Motions to Dismiss, Defendants did not raise the issue that the they were not affiliated with the second website. They only argued that they had no Florida affiliates. It is in their Joint Reply (DE # 26) and in CEO Michael Rosenbaum's Declaration that Defendants first mentioned that the two (2) websites are not a single enterprise and any business dealings or solicitations Plaintiff engaged in through the second

website should not be weighed against them for the purpose of establishing jurisdiction.[4] Even if the Court does not consider interactions with the second website, on these facts, Plaintiff's interactions with GFA's website (www.greyflannelauctions.com) is sufficient on its own to establish significant web-based contact. It is a highly-interactive website where any Florida resident may view, inquire, place an order for and pay, and have direct communication with website administrators. Indeed Plaintiff reviewed the description of and bid on the DiMaggio Jersey through that website. Moreover, from 2002-2010 in addition to any online shopping Plaintiff did on GFA's website, the Court finds it significant that Plaintiff also exchanged e-mail correspondence with Russek. These actions: sending direct email, purchasing items, and placing bids, all create file exchanges that weigh in favor of exercising jurisdiction. Moreover, the injury that Plaintiff alleges to have suffered is closely related to his internet-based contact with Defendants, which obviates the necessity for analysis on relatedness. With so much business conducted today through the internet, value must be placed on electronic dialog and the relationships that ensue as a result. Limited resources do not allow for face to face meetings all the time, nor do parties always have time to make phone calls. Reliance on electronic communications is just as significant however, as traditional forms of contact, particularly when a relationship is ongoing as it appears the parties have had in this case. Therefore, the Court views the internet activity as highly interactive and strongly weighing towards the exercise of jurisdiction.

---

[4] This is contrary to what Plaintiff cites in his factual stipulation which shows that Defendant Russek includes both websites in his email signature, which gives the impression that Russek was acting on behalf of both websites.

11

## II. Due Process Clause

Even though the Defendants may meet the requirements for jurdiction under Florida's long-arm statute, this alone is insufficient to subject them to personal jurisdiction in Florida. The Court must now assess whether the exercise of personal jurisdiction over Defendants comports with the Due Process Clause of the Fourteenth Amendment to the United States Constitution, which requires that the defendant have minimum contacts with the forum state and that the exercise of jurisdiction over the defendant does not offend 'traditional notions of fair play and substantial justice.'" *See Horizon*, 421 F.3d at 1166 (quoting *Int'l Shoe*, 326 U.S. at 316).

### A. Minimum Contacts

Courts must examine three factors in determining whether a defendant has established sufficient minimum contacts with the forum state to comport with the Fourteenth Amendment's due process requirement: (1) whether the defendant has purposefully availed itself of the benefits of doing business in the forum state; (2) whether the cause of action arose out of the activities through which the defendant did so; and (3) whether the defendant could have reasonably anticipated being haled into court in the forum state. *Future Tech. Today*, 218 F.3d at 1250-51 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

The Court finds that Defendants have sufficient minimum contacts with the State of Florida. With the facts in tow, it is clear to the Court that Defendants purposefully availed themselves to the benefits of doing business in Florida. Without restating all previously mentioned facts, Russek traveled to the state frequently and greatly benefitted financially as a result. Importantly, Plaintiff's cause of action arises out of these same trips and dealings. That Defendants

would be subject to suit in Florida for some alleged wrongdoing was thereby reasonably foreseeable. As such, the Court concludes that he possesses sufficient minimum contacts with the forum state.

### B. Fair Play and Substantial Justice

Whether exercising jurisdiction over the Defendants in Florida would comport with traditional notions of fair play and substantial justice is the last inquiry the Court must make in determining whether personal jurisdiction extends to Defendants. *Int'l Shoe*, 326 U.S. at 320. In so doing, the Court must consider "the burden on the defendant, the interests of the forum . . . , and the plaintiff's interest in obtaining relief." *Sculptchair*, F.3d at 631 (quoting *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 113 (1987)).

Russek alleges that Defendants have committed wrongs in, or directly affecting, Florida. Should Plaintiff ultimately prove his claims, it will also successfully prove that it suffered injury in Florida, since it was victim of a fraudulent sale of an expensive peice of merchandise over the internet. Florida has an interest in ensuring that tortious acts not be committed against those within its borders. *See Jackson v. Grupo Indus. Hotelero, S.A.*, No. 07-22046-CIV-HUCK, 2008 U.S. Dist. LEXIS 88922, at *43 (S.D. Fla. 2008) ("Plaintiff has made no allegation that he is a Florida resident, however, as the infringement allegedly occurred in Florida, Florida does have some interest in policing the violation of its laws occurring within its borders."). After consideration of the specifics of this case, the facts support a finding of jurisdiction.

### III. Conclusion

Accordingly, it is **ORDERED, ADJUDGED,** and **DECREED** that Defendants' Motions to Dismiss for Lack of Personal Jurisdiction (DE# 10, 11) be, and the same are hereby **DENIED.** Defendants are instructed to file their Answer to Plaintiff's Complaint

within twenty (20) days of the date this Order is issued.

**DONE** and **ORDERED** in chambers at the James Lawrence King Federal Justice Building and United States Courthouse, Miami, Florida, this 1st day of October, 2010.

JAMES LAWRENCE KING
U.S. DISTRICT JUDGE
SOUTHERN DISTRICT OF FLORIDA

*cc:*

**Counsel for Plaintiff**

**Jeffrey Joseph Pardo**
Pardo & Gainsburg LLP
2 S Biscayne Boulevard
Suite 2475
Miami, FL 33131

**Counsel for Defendant**

**Gregory Alan Baldwin**
Holland & Knight
701 Brickell Avenue
Suite 3000
Miami, FL 33131

**Robert Thomas Watson**
Holland & Knight
701 Brickell Avenue
Suite 3000
Miami, FL 33131